IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jason Thomas,                                          Case No. 3:05 CV 7218

                Plaintiff,                 MEMORANDUM OPINION
                                     AND ORDER

     -vs-
                                          JUDGE JACK ZOUHARY
Ametech,

                Defendant.

## INTRODUCTION

Plaintiff brings his claims of discrimination and hostile work environment under Title VII, 42 U.S.C. §1981 and the Ohio Civil Rights Act of 1964, OHIO REV. CODE §4112.02(A), and requests punitive damages for the intentional and malicious acts of Defendant (Compl. 4). This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and 42 U.S.C. §2000e-5(f).

Plaintiff alleges that Defendant's disciplinary policy was selectively enforced based on race, which led to his termination under the guise of excessive violations. Plaintiff also alleges that Defendant's decision to terminate him was motivated by racial animus and that the racial discrimination was severe and pervasive enough to create a hostile work environment.

## FACTUAL BACKGROUND

Plaintiff was hired by Ametek on June 22, 1999 and received a copy of the Attendance Policy and Work Rules (Dickson Aff. ¶5). Plaintiff was terminated on March 1, 2004 for an excessive

number of Correction Action Notices (Dickson Aff. ¶11; Thomas' Corrective Action Notices, Ex. 3 to Dickson Aff., Doc. No. 31-3 at 35) (Thomas Record).

Corrective Action Notices document an employee's violations of the Attendance Policy and Work Rules.

Defendant's Work Rules state that within twenty-four months "4 minor infractions of any type can result in progressive discipline up to and including discharge" and that "[o]ne or two major infractions may result in discharge" (Work Rules and Attendance Policy, Ex. 2 to Dickson Aff., Doc. No. 31-3 at 1) (Work Rules). Under the Attendance Policy, an employee receives a Corrective Action Notice when, during the previous twelve months, the employee exceeds the number of allowed absences/incidents.[1]

In the twenty-four month period prior to his termination, Plaintiff received Corrective Action Notices for four Attendance Policy violations and six Work Rule violations. Defendant lists the six Corrective Action Notices for Work Rule violations as the reason Plaintiff was terminated (Thomas Record 35). Plaintiff does not dispute that he received these Notices, but instead alleges that non-African American employees were not disciplined for these same violations.

Considering the evidence in a light most favorable to Plaintiff, Plaintiff fails to show racial discrimination either through direct or circumstantial evidence. Under the *McDonnell Douglas* analysis for circumstantial evidence, Plaintiff successfully establishes a prima facie case of race discrimination, but fails to show that Defendant's nondiscriminatory reasons were a pretext for

---

[1] Six days absent and four incidents result in a verbal warning; ten days absent and five incidents result in a written warning; fourteen days absent and six incidents result in a three-day suspension; and eighteen days absent and seven incidents result in employee termination (Work Rules 6).

2

discrimination. Specifically, Plaintiff fails to provide evidence of similarly situated employees who were treated differently.

In addition to selective discipline based on race, Plaintiff claims that he was the victim of such severe and pervasive harassment from fellow employees that it created a hostile work environment. While perhaps Defendant could have done more to foster a more favorable workplace, Plaintiff fails to show that the few incidents that may have been racially motivated were sufficiently severe to create a hostile work environment.

Because Plaintiff fails to establish all elements essential to his case, summary judgment is appropriate.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; s*ee also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the facts and all reasonable inferences must be read in a light most favorable to the nonmoving party. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). However, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249; therefore, it is not the Court's role to judge the evidence or make findings of fact. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1436 (6th Cir. 1987). The purpose of summary judgment is to determine if there are genuine issues of fact for trial. *Anderson*, 477 U.S. at 249. Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## **TITLE VII**

The same analysis used for Title VII claims is also used for Section 1981 and Ohio Civil Rights Act claims. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights*

*Comm'n*, 66 Ohio St. 2d 192, 196 (1981); *Newman v. Federal Exp. Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). In order to establish a prima facie Title VII discrimination claim, a plaintiff may prove direct or circumstantial evidence of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

### 1.     Direct Evidence of Discrimination

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir. 2004). "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.,* 319 F.3d 858, 865 (6th Cir. 2003). "[T]he evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [national origin], but also that the employer acted on that predisposition." *Hein v. All America Plywood Co.,* 232 F.3d 482, 488 (6th Cir. 2000). Direct evidence must arise out of comments or actions of individuals who were involved in Plaintiff's termination. *See Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003) ("comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination"); *Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 433 (6th Cir. 2002) (while comments by manager lacking any involvement in the decision-making process may be circumstantial evidence, they do not constitute direct evidence); *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 354 (6th Cir. 1998) ("isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of . . . discrimination").

Plaintiff has not submitted any facts which would tie the decision to terminate Plaintiff to race discrimination. Plaintiff's conclusory statements that management allowed discriminatory acts to go unpunished and failed to discipline similarly situated non-protected co-workers are not direct evidence of termination due to discrimination, but rather are analyzed as circumstantial evidence.

### 2. Circumstantial Evidence of Discrimination

Circumstantial evidence can be used to raise an inference of discrimination by applying the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A prima facie case of discrimination exists if Plaintiff can show that he: (1) is a member of a protected class; (2) was terminated; (3) was qualified for the position; and (4) was replaced by a person outside the class, or was treated differently than similarly-situated, non-protected employees. *DiCarlo*, 358 F.3d at 415.

If Plaintiff can establish a prima facie case of discrimination, Defendant must articulate some legitimate, nondiscriminatory reason for Defendant's action. *Id.* at 414. If Defendant satisfies this burden, Plaintiff must prove that Defendant's reason was a pretext for discrimination. *Id.* at 414-15.

Pretext can be established by showing that Defendant's reason: (1) had no basis in fact; (2) did not actually motivate the decision to terminate; or (3) was insufficient to warrant the decision to terminate. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

### 3. Prima Facie Case

Defendant admits that Plaintiff has established the first two elements of a prima facie case of discrimination (Def.'s Mem. Supp. Summ. J. 10-11). Plaintiff is an African-American male and thus a member of a protected class, and was terminated from Defendant's employment.

The first disputed element of a prima facie case is Plaintiff's qualification for his position at Ametek. To be qualified for a position, an employee must meet the employer's legitimate expectations and perform to the employer's satisfaction. *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000). Defendant's expressed reasons for Plaintiff's termination are the six Corrective Action Notices for Work Rules violations within a twenty-four month period. Defendant states these violations show Plaintiff was not meeting company expectations. However, the reasons for termination cannot also be used to disprove Plaintiff's qualifications. *Cicero v. Borg-Warner Automotive, Inc*., 280 F.3d 579, 585 (6th Cir. 2002). Rather, the discharge justifications should only be considered in the later stages of the *McDonnell Douglas* test. *Id.* at 585.

Plaintiff offers a Five Year Certificate of Appreciation given to him by Defendant to show he was qualified (Thomas Aff., Ex. A). Defendant offers no other evidence, beyond the termination justifications, of Plaintiff's failure to meet Defendant's expectations or standards. Therefore, for the purposes of summary judgment, through evidence that he had performed his job for five years, Plaintiff has established the qualifications element of a prima facie case of discrimination.

The second disputed element is whether Plaintiff was replaced by a person not a member of his protected class or was treated differently than a similarly situated person outside the protected class. If Plaintiff can show either, he satisfies the elements of a prima facie case of discrimination. Plaintiff states in his affidavit that "upon his termination from his employment he was replaced by a white female employee" (Thomas Aff. ¶23). For purposes of summary judgment, Plaintiff has satisfied the fourth element of a prima facie case of discrimination. The burden now shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination.

7

### 4. Defendant's Legitimate Nondiscriminatory Reasons for Termination

Defendant asserts that Plaintiff's excessive number of Correction Action Notices for Work Rules violations were the reason for Plaintiff's discharge (Def.'s Mem. Supp. Summ. J. 13). Plaintiff received Corrective Action Notices for (1) failure to "report off " (call in sick) prior to his shift; (2) not wearing eye protection three times; (3) failure to provide enough product for the next shift; (4) insubordination; (5) failure to process product correctly; and (6) failure to obtain permission and failure to clock out when leaving the plant (Thomas Record).[2] Under Defendant's Work Rules, four Corrective Action Notices within a twenty-four month period are sufficient reason to discharge an employee. Plaintiff had six Notices within twenty-four months. Therefore, Defendant has successfully articulated a legitimate, nondiscriminatory reason for Plaintiff's termination.

### 5. Pretext

Since Defendant has established a nondiscriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff. Plaintiff must show that the stated reason was a pretext for discrimination by providing "sufficient evidence from which the jury [could] reasonably reject the employer's explanation." *Manzer*, 29 F.3d at 1083. Pretext can be established by showing that Defendant's reason: (1) had no basis in fact; (2) did not actually motivate the decision to terminate; or (3) was insufficient to warrant the decision to terminate. *Id.* at 1084. "A plaintiff must do more than simply impugn the legitimacy of the asserted justification for her termination; in addition, the plaintiff 'must produce sufficient evidence from which the jury may reasonably reject the employer's

---

[2] In the twenty-four month period prior to his termination, Plaintiff also received: (1) a written warning for violating the Attendance Policy; (2) a three-day suspension for violating the Attendance Policy; (3) a three-day suspension for violating the Attendance Policy; and (4) a written warning for violating the Attendance Policy (Thomas Record 15-34). Plaintiff's sixth Corrective Action Notice was actually for two violations (Thomas Record 35): Plaintiff had (1) left the plant without permission of his supervisor; and (2) did not punch in or out. *Id.*

explanation.'" *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 730 (6th Cir. 1999) (citing *Manzer*, 29 F.3d at 1083).

Plaintiff argues that the real reason he was terminated was for being black and that white employees were not disciplined for the same violations (Pl.'s Response at 1). Plaintiff has not argued that Defendant's nondiscriminatory reason had no basis in fact; therefore the analysis will center on the second and third methods of showing pretext.

### a. The Corrective Action Notices Actually Motivated Defendant to Terminate Plaintiff

The second method of proving pretext is to show the reason did not actually motivate the decision to terminate. "To establish pretext under the second *Manzer* method, the plaintiff admits the factual basis underlying the discharge and acknowledges that such conduct *could* motivate the dismissal, but attacks the employer's explanation 'by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant.'" *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (emphasis in original) (citing *Manzer*, 29 F.3d at 1084). "In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Manzer,* 29 F.3d at 1084. Plaintiff would have to show that, even if he did violate the Work Rules and receive six Corrective Action Notices, it was more likely than not Defendant terminated him because of his race. Plaintiff however offers no evidence to prove Defendant was actually motivated by racial animus.

9

Plaintiff submits the affidavits of Jason Thomas, Brian Cummins and Doug Upshaw (Doc. Nos. 3, 7, 38 and 39).[3] Cummins states that "2nd shift foremen did not like Jason Thomas because he was a [sic] outspoken black employee . . ." and that "a white foreman, Al Coffey did not like Jason Thomas because he was black" (Cummins Aff. ¶¶ 4, 8). Upshaw states that "Jason Thomas was terminated for being an outspoken black male," and that "Ametech [sic] wanted to dismiss Jason Thomas at any cost" (Upshaw Aff. ¶¶ 7-8). In his own affidavit, Plaintiff does not allege any evidence that Defendant considered race in terminating his employment (Thomas Aff.).

FED. R. CIV. P. 56(e) requires that affidavits "set forth such facts as would be admissible at trial." Conclusory affidavits cannot be used to create a question of fact. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 584-85 (6th Cir. 1992). At the summary judgment stage, a court may only consider affidavits that are based upon personal knowledge. *Brainard v. American Skandia Life Assur. Corp.* 432 F.3d 655, 667 (6th Cir. 2005).

The statements made by Cummins and Upshaw do not support Plaintiff's arguments. There is no indication that either Cummins or Upshaw had personal knowledge of racial animus within Defendant's management. The affidavits certainly do not allege any admissible facts that would support their conclusions. Even if this Court were to consider these statements, the statements amount to nothing more than rumor or subjective beliefs which are "wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell*, 964 F.2d at 585.

---

[3] These affidavits were not signed by the affiant or the notary. The affidavits had their printed names with "(consent)" typed next to them. The State of Ohio does not recognize an electronic notary signature, and parties usually submit an affidavit electronically by scanning it into the system. Plaintiff previously scanned and filed other documents with this Court, and the Court can only wonder why these affidavits were submitted improperly. While these affidavits do not meet the evidentiary requirements of Federal Civil Rule 56(e), the Court will treat them as though they had been properly signed and witnessed for purposes of this analysis.

Further, Plaintiff's statements that other employees harassed him because of his race do not disprove that the Corrective Action Notices actually motivated Defendant. Plaintiff claims he found a hangman's noose near his work station, dead animals in his boots and locker, and a drawing of monkeys with the words "we have enough monkeys we don't need anymore" by his locker (Thomas Aff. ¶¶19-20). While these alleged activities of unknown employees are deplorable, they are insufficient to show that those involved in the decision to terminate Plaintiff were actually motivated by something other than the Corrective Action Notices.

Therefore, because Plaintiff has failed to present any evidence that Defendant was actually motivated by racial animus to terminate Plaintiff's employment, Plaintiff has failed to create a triable issue of pretext.

### b. The Corrective Action Notices Were Sufficient to Justify Plaintiff's Termination

The final method of proving pretext is to show the nondiscriminatory reason was insufficient to warrant the decision to terminate. This method usually consists of "evidence that other parties . . . were not fired even though they engaged in substantially identical conduct." *Manzer*, 29 F.3d at 1084. When an employee is fired for a series of incidents, the similarly-situated employees must have committed a comparably serious *series* of bad acts. *Warfield*, 181 F.3d at 730-31 (in a sex discrimination case, Plaintiff did not establish pretext when she established that males were not terminated when they committed *some* of the same acts). If a plaintiff commits acts A, B, C and D and is terminated, plaintiff cannot establish pretext by proving that a co-worker outside the protected class committed B and was not terminated and another co-worker outside the protected class committed

11

C and was not terminated. *Id.* at 730.[4] The compared employees must have "nearly identical" situations and be similar in all relevant aspects. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994).

Whether a factor is relevant is a determination to be made by the court on a case by case basis, but some factors to consider are whether the individuals had the same supervisor, were subject to the same standards of conduct, or "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich*, 154 F.3d at 352 (quoting *Mitchell*, 964 F.2d at 583). Here, Plaintiff fails to establish that these other employees engaged in the same conduct or the same series of violations. Plaintiff's conduct occurred in such differentiating circumstances to distinguish his conduct from others.

Even assuming all of Plaintiff's affidavits are properly filed and admissible as evidence, Plaintiff fails to identify a similarly-situated non-protected employee who committed a comparably serious series of bad acts. Instead, Plaintiff offers piecemeal comparisons of bad acts. Upshaw, an African-American machine operator and Union shift steward (Upshaw Aff. ¶¶ 4, 5) does not claim any personal discrimination or that he violated Work Rules without punishment; instead he states that he has seen unnamed white employees miss work, leave work without clocking out, and work without safety glasses, each without punishment (Upshaw Aff. ¶¶ 9-11), and that he has seen other employees

---

[4] Even if this Court were to analyze each of the six Corrective Action Notices under the *McDonnell Douglas* test for discriminatory discipline, instead of discriminatory discharge, Plaintiff's claim of discrimination would fail. The *McDonnell Douglas* test requires an adverse employment action, which causes a "materially adverse change in the terms and conditions of employment" and "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Bowman v. Shawnee State University*, 220 F.3d 456, 461 (6th Cir. 2000). The only Notice that resulted in an adverse employment action was Plaintiff's three-day suspension for insubordination. The others fail to support a prima facie case of discrimination. Plaintiff received the insubordination notice when he called his supervisor an "ass" but Plaintiff has failed to show others who were not disciplined for insubordination (Thomas Record). Plaintiff's claim of discrimination would fail for each of the individual disciplinary actions under the *McDonnell Douglas* analysis.

commit various offenses (Upshaw Aff. ¶14). While Upshaw names Work Rule violations similar to those for which Plaintiff was disciplined, Upshaw fails to identify any employee who committed a series of violations similar to those of Plaintiff.[5]

For example, the disciplinary work record of Brian Cummins contains multiple suspensions. However, a comparison of Cummins' situation to Plaintiff's clearly shows they were not similarly situated in all relevant respects. *Ercegovich,* 154 F.3d at 352. According to Cummins' disciplinary record, in the twenty-four month period prior to Plaintiff's termination, Cummins received five Corrective Action Notices for Work Rules violations and had no Attendance Policy violations (Thomas Record; Cummins Corrective Action Notices; Ex. 5 to Dickson Aff., Doc. No. 31-3) (Cummins Record). Plaintiff had six Corrective Action Notices for Work Rules violations and four for Attendance Policy violations in the same time period. Further, Plaintiff and Cummins share only one similar Corrective Action Notice: the failure to properly take care of a workstation (Cummins Record). While Cummins was not disciplined, and Plaintiff was, for failing to clock out and working without his safety glasses (Cummins Aff. ¶7),[6] their records are not "nearly identical." Plaintiff was

---

[5] Plaintiff claims that Chris Getzer was "over the limit of write ups" but was not terminated (Thomas Aff. ¶22). Even if Plaintiff had personal knowledge rendering this evidence admissible, this statement would not support disparate treatment. Plaintiff, himself, was over the limit of four "write ups" and was not terminated. It was not until his sixth Corrective Action Notice that he was terminated. He has not shown any difference in treatment between himself and Getzer.

[6] In Plaintiff's own affidavit, he claims that a number of white employees were seen violating Work Rules but did not receive any discipline (Thomas Aff. ¶¶ 12-18, 21-22). However, Plaintiff's statements contain hearsay and fail to indicate that he had personal knowledge of the events alleged. Plaintiff admits in his deposition that he had no personal knowledge of other employees' disciplinary files and therefore cannot establish through his affidavit that white employees were not disciplined for these infractions (Thomas Dep. 82, 93). *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (plaintiff cannot create a factual issue by filing an affidavit, after a motion for summary judgment, which contradicts her earlier deposition testimony). Statements based upon inadmissible evidence and statements lacking personal knowledge, in Plaintiff's affidavit as well as Cummins and Upshaw's affidavits, cannot satisfy Plaintiff's burden of proof. *Brainard*, 432 F.3d at 667. While Plaintiff states that Cummins was not disciplined for threatening another employee, this Court can only consider statements based on personal knowledge (Thomas Aff. ¶12). This Court must, therefore, restrict its analysis to Cummins' own statements that he failed to clock out and wear his safety glasses without repercussion.

disciplined after being seen without his glasses on three separate occasions, while Cummins only claims one, and Plaintiff was disciplined for not clocking out when he left the work premises without permission, while Cummins only claims to have been caught not clocking out (*Id.* at ¶¶ 6-7; Thomas Record; Cummins Record). The relevant differences are that Plaintiff committed **more** violations of **both** the Work Rules and the Attendance Policy, committed more serious violations, and had more repeat offenses of the same nature. Plaintiff had four Attendance Policy violations, failed to let Defendant know he would not be at work, and left work without permission. Such recidivism is a relevant difference between their disciplinary histories and distinguishes Plaintiff's conduct. In sum, Plaintiff and Cummins are not similarly situated and a comparison between them cannot establish a pretext.

To further support his claim of pretext, Plaintiff also cites the Ohio Department of Job and Family Services (Department) determination that "there was not enough fault on the part of [Plaintiff] . . . that an ordinary person would find the discharge justifiable" (Determination of Empl. Benefits, Ex. B to Thomas Aff., Doc. No. 37). The Department was determining whether Plaintiff's unemployment claims should be allowed. *Id.* The Record is incomplete as to the basis upon which the agency made its decision. However, even if the Record was complete, a determination that the discharge of Plaintiff was not ordinarily justifiable is not the same as a determination that he was treated differently from employees outside his protected class. As noted previously, under Defendant's Work Rules, six Corrective Action Notices justified termination. The agency's determination does not touch upon the issue before this Court of establishing pretext.

Defendant's nondiscriminatory reasons sufficiently motivated the termination of Plaintiff under the *McDonnell Douglas* analysis. Since Plaintiff has not successfully demonstrated pretext

14

under any of the three methods, no material facts remain in dispute and the claims of discrimination are dismissed.

### **HOSTILE WORK ENVIRONMENT**

Although not mentioned in the Complaint, in his Response to Defendant's Motion for Summary Judgment, Plaintiff states he has clearly proven a prima facie case of a hostile work environment. Viewing all facts and drawing all reasonable inferences in the light most favorable to Plaintiff, we will address this claim as well.

A prima facie case requires Plaintiff to prove: (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his race or national origin; (4) the harassment had the effect of creating a hostile work environment; and (5) the existence of liability of the employer. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).

Plaintiff is an African-American male and, as noted, is a member of a protected class. On an unknown date, Plaintiff found a drawing taped inside his locker door, on which were four monkeys with initials below the monkeys, and the words "Three house monkeys, we don't need four" (Thomas Dep. 48). Plaintiff reported the drawing to Production Manager, Scott Trochim, who said he could not do anything if Plaintiff could not identify who did it (Thomas Dep. 54). On unknown dates, Plaintiff also found in his locker broken safety glasses, a dead bird, worms in his boots, and most recently a live rodent (Thomas Dep. 48-63). Plaintiff reported these events to management, but was told if he did not know who did it, there was nothing they could do (Thomas Dep. 59-60, 62). In November 2003, around the time of the rodent incident and after Plaintiff found the monkey drawing, Defendant held harassment training (Thomas Dep. 58, 63; Modic Aff. ¶3). Plaintiff also alleges his lunch was stolen out of the lunchroom, and his uniforms were placed in the trash and he did not get

15

replacement uniforms for three months (Thomas Dep. 80-81). Plaintiff saw a hangman's noose at work, which he complained about, and believed was directed at him based on seeing a Ku Klux Klan hood at work (Thomas Dep. 88-90). Finally, Plaintiff alleges a co-worker used the word "nigger" to describe Plaintiff, and Plaintiff was disciplined for infractions for which non-African American employees were not punished (Cummins Aff. ¶11; Thomas Aff. ¶¶ 12-18, 21-22). With this Record, Plaintiff has alleged unwelcome harassment and has satisfied the first two elements of a prima facie case of a hostile work environment.

Plaintiff also provides sufficient evidence to establish the third element of a prima facie case. The third element requires that the harassment be based upon Plaintiff's race or national origin. The noose near his workstation, the drawing of monkeys found near his locker and the use of the word "nigger" each carry a sufficient stigma so that, in the light most favorable to Plaintiff, they may have been racially motivated. Plaintiff fails to show that the dead animals in his locker and the placement of his uniforms in the trash, were themselves racially motivated but "facially neutral abusive conduct can support a finding of . . . animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other overtly . . . discriminatory conduct." *Jordan v. City of Cleveland*, 464 F.3d 584, 596 (6th Cir. 2001) (citing *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999).

Finding that the evidence may be sufficient to show racial animus, the analysis turns to the fourth element of the prima facie case, the creation of a hostile work environment.

A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (citations omitted); *see also Jordan*, 464 F.3d at 597-98.

In determining whether the harassment was sufficiently severe or pervasive, the Court should look at the totality of the circumstances and consider: (1) the frequency of discriminatory conduct; (2) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (3) and whether it unreasonably interfered with Plaintiff's work performance. *See id.* at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted).

Under the analysis described above, the events at Ametek do not rise to a level sufficiently severe or pervasive enough to constitute a hostile work environment. None of the events were physically threatening to Plaintiff. The noose was hung in Plaintiff's general work area, but there is no indication the noose was directed at Plaintiff or with the intent to harass Plaintiff because of his race, or that he was physically threatened by it, or that it unreasonably interfered with his work. (As noted previously, there is evidence the noose was hung during a period of contract negotiations and was directed at a white manager.) While a drawing of monkeys with Plaintiff's initials underneath one of the monkeys was undoubtedly humiliating, Plaintiff has not indicated that any subsequent drawings were found or that the drawing unreasonably interfered with his work performance. As for the name-calling, Cummins' affidavit indicates that he heard Dave Sheeter, a co-worker, often call Plaintiff a racially derogatory name. Plaintiff does not indicate how frequently this occurred, or even if the name-calling was done in Plaintiff's presence. Also, there has been no showing that Plaintiff's job performance was affected in any way. Viewing the situation as a whole, under the analysis set

17

forth in *Harris* and *Jordan*, the events alleged by Plaintiff were not severe or pervasive enough to constitute a hostile work environment and, therefore, fail to establish a prima facie case of a hostile work environment under Title VII.

## CONCLUSION

Viewing the evidence in a light most favorable to Plaintiff, and even considering the affidavits which do not meet the procedural requirements of FRCP 56(e), reasonable minds could not differ. Defendant's Motion for Summary Judgment is granted and the case dismissed.

IT IS SO ORDERED.

       s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

October 31, 2006